O’Neall, J.,
delivered the opinion of the court.
A brief statement of the case proved, and of the plaintiff’s pleadings will be sufficient, for a correct understanding of all the questions to be discussed and decided. It appears that on the 21st of April, 1814, Doyen made a due bill, not negotiable, for sixty-eight dollars and fifty cents, to the plaintiff’s assignor. Doyen died about six years ago; six months before his death he promised to pay the due bill, and Desportes, the executor, aften promised to pay the debt, and three months before his death, which took place in 1828, he promised to *121 pay, saying “that he had a negro to sell belonging to the estate of Doyen, and that as soon as he was sold he would pay it.” Subsequent to this promise, Mativier assigned the due bill to the plaintiff.
The two first counts are on the due bill as a promissory note, in which the usual promises are laid from the maker to the payee ; in the third and last count, the due bill is relied on as a promissory note, with the usual promises from the maker to the payee, and it is there stated that the note being and remaining wholly due and unpaid at and after the death . of Doyen, the executor, Desportes, in consideration thereof, promised to pay it. The plaintiff, at the foot of his declaration, states the assignment to him of the note, and avers that thereby an action has accrued to him according to the act of the General Assembly in such case made and provided. The defendants pleaded the statute of limitations and had a verdict-. The questions which seem to me to be important to be considered, are, 1st. Is the promise of the executor sufficient to prevent the operation of the statute ? 2d. Is the old debt or h the new promise the cause of action ? 3d. If the latter is the cause of action, can the assignee of the note maintain his action upon it ?
1st. The general rule is, if a debt is not barred at the death of the testator or intestate, the promise of the executor or administrator to pay it, will prevent the operation of the statute of limitations.
The reason of this rule appears to be, that if the debt was not barred at the death of the testator or intestate, the plaintiff had a good cause of action against the executor or administrator, which would be a sufficient consideration to support his subsequent promise, made after the statute had run out. If, however, the statute had barred the debt in his testator’s or intestate’s lifetime, then the new promise of the executor or administrator, if made as such, would not be binding; but where the debt is not barred at the testator’s death, the promise of the executor or administrator, to be binding, must be an express promise to pay, or that which is equivalent to it, and will be sufficient to raise an implied promise.
If the promise is conditional, the condition must be shown to have happened.
*122 The application of these general principles, to the first question before us, is free from any difficulty. The testator, according to the testimony, about six months before, his death promised' to pay the debt. This, according to the decision in the case of Young vs. Monpoey, 2 Bailey, 278, which will be more fully noticed in the second question, was enough to prevent the operation of the statute. The payee of the note, Metivier, had a legal cause of action against him o at his death, and of course against his executor. The subsequent promise of the executor or administrator was, therefore, upon a legal consideration, and would bind him as executor or administrator, if it was express and unconditional. If his promise was conditional, then it was necessary to both set out the promise and condition, and aver and prove the performance of it. Without stopping to illustrate this position by many cases which might be adduced to support it, I will only refer to the very able opinion of Lord C. J. Tenter-den in the case of Tanner vs. Smart, 13 Eng. Com. Law Rep. 273, as an authority directly in point. That was a case of a promise to pay as “soon as I can;” it was held to be a conditional promise, and that it could only be enforced, by showing the party’s ability. The Lord 0. j. remarks, “ The question then comes to this: Is there any promise in this case which*will support the promises in the declaration ? The promises in the declaration are absolute and unconditional to pay when thereunto afterwards requested ; the promise proved here was, “ I’ll pay as soon as I can;” and there was no evidence of ability to pay, so as to raise that which in its terms was a qualified promise into one that was absolute and unqualified;” 13 Eng. Com. Law Rep. 88; 8 Eng. Com. Law Rep. 66. That was a case between the original parties, and if there a conditional promise could not avail the plaintiff much less can a conditional promise of an executor have the effect of an absolute one. From the view which I shall hereafter take of .other parts of this case it will appear that I regard the new promise which takes the case out of the statute of limitations, as a new cause of action, and if so it ought to be set out in the declaration, in the words in which it was made, or according to its legal effect. If the condition contained in it, upon happening or being performed, turns the conditional promise into an absolute one, it is a sort of condition precedent to the *123 plaintiff’s maintaining bis action, and must be averred in tbe declaration and proved on tbe trial The promise by the executor here, was, “ that he had a negro belonging to the estate of Doyen, and that as soon as he was sold he would pay it.” The sale of the negro was the condition upon which he promised to pay, and until this was shown he could not be liable. But as this distinction was not adverted to on the trial, and as there' is no objection to the sufficiency of the. declaration on the promise proved, we would not suffer the plaintiff to be prejudiced by this oversight; for it may be, that he could have proved either an absolute promise, or the sale of the negro, if the necessity of such proof had been pointed out. But as the plaintiff must fail in this case in the two last questions, it was thought best to briefly state our view of the manner in which the new promise should be set out and supported by proof.
2d. The second question, (Is the old debt or the new promise the cause of action ?) is one of great importance, both an account of the general interest of the community in it, and also on account of putting an end to one of the most vexed questions which has been discussed. Uniformity and harmony between the decisions of the Courts, as establishing rules both of action for the citizens and the practice of the Courts, is also a most desirable end to be attained by this decision, if practicable. In deciding upon the statute no rule can be more universal, than that it is the duty of the Courts to expound it as it is, and not as we might think it should be. The statute of limitations has been for a long series of years the subject of eulogy or blame by the different persons who have been called in to discuss it, as fancy or the circumstances of the case dictated. Generally, however, in all modern cases, it has been regarded by the 'ablest Judges and soundest lawyers as founded on a wise policy, and to be sustained and enforced according to its letter, and not frittered away by distinctions unauthorized by its provisions. It is a little remarkable, that in the variety of decisions on the statute of limitations, in relation to the actions of debt on simple contract and assumpsit, until very recently, how completely its provisions have been overlooked. Any thing which admitted that a debt ever had an existence, was held to be enough to take a case out of the statute of limitations. This capricious, *124 and I might say dangerous current of decisions, has at length been arrested, and the Judges of the Courts of the United States, of this State, New York, Pennsylvania and England, have about the same time abandoned the rules of previous decisions, and have returned to the statute to ascertain in what cases it shall or shall not operate as a bar.
The statute (P. L. 102,) directs that the action of debt on simple contract, and assumpsit, shall be brought “ within four years next after the cause of said action or suit, and not after the words of the statute are of plain and obvious meaning, and to give it effect only two questions need be asked, when did the cause of action accrue ? Is the suit brought within four years from the accrual of the cause of action ? In all cases where there has been no intervening disability, the answers to the questions would enable us at once to say whether the bar of the statute precluded the plaintiff’s recovery or not. When did the cause of action accrue ? is always to be answered by ascertaining when could suit have been brought upon it? In assumpsit and debt on simple contract, this is ascertained from the time the debt fell due; consequent upon that, is the right to demand payment, and of course to sue (if not paid.) If more than four years intervenes between the time at which the party by his contract had the right to demand the payment, and the institution of the suit, the bar of the statute is complete and effectual, and the cause of action is gone. But the old debt, as a past consideration, will support a new promise, for notwithstanding it cannot be legally enforced as a cause of action, yet if it has not been paid, the party who contracted it is in honesty, which is but another name for one branch of good morals, bound to pay it. This obligation of honesty and morality is a good consideration, and the new promise founded upon it .will be enforced; but it is a new cause of action, not as the "revival of the- old one. For if not regarded as a new cause of action, the words of the statute would prevent it from enabling wthe party to recover. Regard it as a new contract, a new cause of action, and the case is not affected, by either the intent or the words of the statute. This plain, but I think obviously correct, exposition of the statute, makes it easily understood and easily to be applied to all future cases. The only reason which can be assigned why it was ever supposed that the old debt and *125 not the new promise, was the cause of action, is that in counts indebitatus assumpsit, or on a note or bill of exchange, the precedent indebtedness in the first, the mating of the note, the drawing, accepting or endorsing the bill in the second, and the consequent liability to pay, is stated as the consideration of the legal assumpsit laid. In it, the true time is wholly immaterial, and of course any promise between the consideration and the suing out of the original writ, can be given in evidence, as between the parties to the contract; hence the new promise, being received in actions of this kind, as corresponding with the allegata, it was easy to suppose and conclude that the old debt was revived and was the cause of action. This view, too, was much encouraged by many loose expressions of that kind, to be found in the opinions of some of the most learned Judges. But I propose now to show from a review of many cases, that the old debt is nothing more than the consideration of the new promise, and that this new contract is the cause of action.
In the case of Pittam vs. Foster, and Norris and wife, 8 Eng. Com. Law Rep. 67, the action was brought on a joint note made, by Foster and Mary Norris, dum sola, to the plaintiff in 1814; the promise was laid accordingly. Tbe case was tried in 1823, and the statute was pleaded, A new promise by Foster was proved within six years before suit brought. A nonsuit was ordered, on the ground that a promise made by one of two joint makers of the note, did not sustain the promise laid in the declaration. Abbott, C. J., States the point tó be decided, in the following words : “ this question depends upon the form of the promise, laid in the declaration; that is not material, because a promise by the wife after marriage would not be available; then, the question is, whether an acknowledgment made within six years operates as a new substantive promise, or draws down the original promise to the time when the acknowledgment is made;” from which it appears that the question, whether the new promise was a revival of the old debt, or a new contract and cause of action, was the very point before the court, and upon which they ordered the nonsuit. That decision could not have been made if the new promise bad been a revival of the old debt. For then the allegata et probata, would *126 have corresponded. But regarding it as a new contract, it was the promise of one, and not of all the defendants, and the variance was apparent and precluded the plaintiff from recovery.
In Scales vs. Jacobs, 13 Eng. Com. Law Rep. 85, a promise to pay when able, was relied on to take the case out of the statute; it was held by Gaselee, J., and Best, C. J., that the new promise, although made before the statute bad run, was conditional, and to enable the plaintiff to recover, be must show the defendant’s ability to pay. It follows from the decision, that the new promise was the gist of the action, otherwise it would not have been necessary to have shown that the defendant was able to pay. If the old debt bad been revived, it would have cast the liability on the defendant, whether able to pay or not. Gaselee, J., p. 88, puts the case upon the proper footing. He says, “it is not necessary to cite more decisions to show that a promise made under such circumstances as those of the present case, is a new promise, and not a revival of’ the old one, and must be correctly declared on according to the fact, for the same reason that a promise made by an executor will not support a declaration on a promise made by the testator.”
In Tanner vs. Smart, 13 Eng. Com. Law Rep. 273, the following promise, “I cannot pay the debt at present, but I will pay it as soon as I can,” was held not to be sufficient to take the case out of the statute. In the course of the case, Lord C. J. TeNteedeN, (274,) says, “ though this statute puts all the actions upon the same footing, it is only in actions of assump-sit, that an acknowledgment has been'held an answer; and when, in the case of Hurst vs. Parker, 1 B. & A. 92, it was decided to be inapplicable to actions of trespass, Lord Ellen-borougb gives what appears to be the true reason, that in assumpsit, “an acknowledgment of the debt is evidence of a fresh promise ; and that promise is considered as one of the promises laid in the declaration, and one of the causes of action which the declaration states.” These observations of bis apply to cases where the action is between the original parties to the contract; when, however, it is not, a different rule applies. Tbe promise must be laid as in fact it really is. At page 275, 'be says, “ upon this principle, whenever the *127 acknowledgment supports any of the promises in the declaration, the plaintiff succeeds; wben it does not support them, (though it may show clearly that the debt never has been paid, but is still a subsisting debt,) the plaintiff fails.”
In the case of Gould vs. Shirley, 17 Eng. Com. Law Rep. 219, the promise proved, to take the case out of the statute, was, that “be the defendant, was going over to Hawly in the course of three weeks, and be would help the plaintiff to five pounds if be could it was held to be insufficient, and the plaintiff was nonsuited, by the concurrence of all the Judges of the Common Pleas.
These recent decisions of the English Courts of King’s Bench and Common Pleas, show, that whatever may have been the previous decisions, that at present, the rule is settled, that the new promise and not the old debt, is the cause of action.
In New York, in the case of Sands vs. Gelston, the subject came before the Superior Court — and SpeNCER, J., who delivered the opinion, says, (15 J. R. 519,) “ the statute of limitations requires all actions on contract to be commenced within six years after the cause of such action accrued, and not after. The remedy being suspended after six years, there yet exists a moral duty on the part of the debtor to pay the debt, and accordingly a promise to pay a debt not extinguished, but as to which the remedy is lost, is a valid promise, and may be enforced on the ground of the preexisting moral duty.”
This subject was fully discussed and considered by the Supreme Court of the United States, in the case of Bell vs. Morrison, 1 B. & A., 351, in which it was beld, that an acknowledgment of a debt by one of several partners, after the dissolution of the firm, was not enough to take the case out of the statute as against the other partners ; and that to take the case out of the statute, the promise must be an express promise to pay; or the acknowledgment (if an implied promise is to be raised,) must contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay. These principles so decided, are irreconcilable with the notion that the old debt is revived, for if that was the case, any thing which went to *128 show it now exists, would answer that purpose; and of course a recognition of it by one of several partners, even after dissolution, on the principle of the cases on which it has heretofore been held that an acknowledgment or promise of one of two joint contractors would be enough to take the case out of the statute, would have revived the old debt, or more properly speaking, would have shown that it was still subsisting ; so, too, if the old debt is only to be revived, and is still to be the cause of action, it would seem that any thing which went to negative the legal presumption of its being-destroyed, would be enough for that purpose. It is, however, manifest that the promise of the partner, after dissolution, is regarded as his contract, which does not affect the others, and becomes, therefrom, a new contract. Where an express promise, or an unqualified and direct admission of a previous subsisting debt, which the party is willing and liable to pay, is required to take a case out of the statute, all the essentials of the good, express or implied contract are required to be made out; and after such requisition, it would be idle to talk about the old debt being the cause of action, when the party, to recover, must make out a new one. It is true, Judge Story, in delivering that opinion, does speak about the revival of the old debt; but it is manifest that this expression is used, more to designate what is necessary to enable the plaintiff to recover against the statute, than to point out the cause of action; for, when he comes to look to this, his language is, “if the bar is sought to be removed by the proof of a new promise, that promise, as a new cause of action, ought to be proved in a clear and explicit manner, and be in its terms unequivocal and determinate, and if any conditions are annexed, they ought to be shown to be performed.
This court, in the case of Young vs. Monpoey, 2 Bail. 278, had occasion to review all the cases decided in this State on the same subject, and the rule laid down was, that where the statute had not run, a slight acknowledgment would be-sufficient to prevent its operation; but if it bad run out, then that there must be either an express promise to pay, or an admission of a subsisting debt, which the party is willing and liable to pay. In that case my brother Johnson, speaking of cases in which the statute had run out, says, “ in cases of this last description, there is no subsisting legal obligation *129 in contemplation of law, and so far as the liability of the defendant is concerned, it is as though there never had been any. The state of facts on which the law would raise a promise is wanting. These must be supplied by the defendant himself, and nothing short of a new contract, or an admission of the state of facts on which the law will raise a promise, will suffice. The past consideration is sufficient to support a new promise, but it is the new engagement which resuscitates and gives activity to the obligation.” This case has been regarded as settling the law — and in conformity with its rules, were decided the cases of Grist vs. Newman, 2 Bail., 92; Cohen & Nesbitt, vs. Aubin, Ib. 283; Trammell vs. Salmon, Ib. 308; Lowry vs. Dubois, Ib. 425; the first of these cases, Grist vs. Newman, was decided without adverting to the necessity of showing that the condition annexed to the promise had been complied with, and so far I am satisfied that case is wrong. In Lowry vs. Dubois, the action was between the original parties, and the new promise was therefore admissible, on the promises laid in the declaration. These decisions establish conclusively, that at least after the debt is barred, the new promise is the cause of action. This position, too, is sustained by the analogy of some earlier decisions of our own courts.
In Glenn vs. McCullough, 2 McC. 212, the action was brought by the executors on a note payable to their testator, and they counted on promises to the testator alone. The statute of limitations was pleaded, and to prevent its bar the plaintiffs proved a promise to themselves within four years ; it was held that this did not support the allegation of a promise to the testator, and the plaintiff was nonsuited.
Jamieson vs. Lindsey, 4 McC. 93, was an action by an administrator on a note payable to his intestate; the promises laid in the declaration, were to the intestate; the defendant pleaded the statute of limitations. The plaintiff replied a promise to his intestate, and to himself within four years; the defendant demurred to that part of the replication which replied a promise to the administrator within four years, on the ground that it was a departure from the declaration. The late venerable and admirable Judge Waties overruled the demurrer, on the ground, that the promise to the administrator was a revival of the old debt, and that therefore the *130 replication sustained the declaration. The plaintiff proved a' promise to himself within four years, and had a verdict. On appeal, the Constitutional Court reversed the decision on the demurrer, and set aside the verdict, but gave the plaintiff leave to amend by adding a count on the promise to himself as administrator. These two cases settle, in conformity to the English cases, that promises made by a defendant to pay a debt due to the testator or intestate, and against which the statute would otherwise operate, cannot be given in evidence under counts on promises to the testator or intestate; from them it must also follow as a legitimate consequence, that they do not revive or set up the old debt, but are themselves a new contract, and the plaintiff’s cause of action.
Having thus reviewed the eases which I thought necessary for the purposes of this case, I think I do not venture any thing like a rash assertion, when I say they conclusively prove and sustain the proposition with which I set out— “ That the'old debt is nothing more than the consideration of the new promise, and that this new contract is the cause of action.”
In the case before us, the plaintiff must entitle himself to recover on the new promise as his cause of action, or fail; for it may be, (though I doubt it,) that there would be a distinction as to the effect of a promise made by the party to a contract before the statute had run out, in reviving a debt, and one made after it had run out; still that distinction, if it exists, cannot avail the plaintiff; for although the statute had been prevented from operating in Doyen’s lifetime by his promises, yet after his death the executor’s promise to pay makes a new contract, and does not revive the old debt; and hence the necessity the plaintiff was under to count on the promise of the executor.
3d. This brings us to the consideration of the third and last question: Can the assignee of the note maintain this action upon the executor’s promise to Metivier to pay it ? It is clear, he cannot. It is a contract resting altogether in words, and cannot be assigned; the assignment of the note is nothing more than an assignment of the consideration, and is therefore inoperative, at law, and conveys no legal right of action to the plaintiff According to these views the present *131 plaintiff bas.no right of action, and a verdict was, therefore, properly rendered in favor of the defendant.
The motion for a new trial is dismissed.